J-A14010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RDF AGENT, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CENTRAL STATION PROJECT | : | |
| OWNER, LLC | : | |
| | : | No. 2884 EDA 2024 |
| Appellant | : | |

Appeal from the Order Entered October 9, 2024
In the Court of Common Pleas of Delaware County
Civil Division at No(s): CV-2024-000660

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED JULY 30, 2025**

Central Station Project Owner LLC ("Central Station") files this appeal from the order entered in the Court of Common Pleas of Delaware County overruling its preliminary objections to the complaint filed by RDF Agent, LLC ("RDF") and directing it to file an answer. Central Station's preliminary objections sought dismissal of RDF's complaint with prejudice due to, *inter alia*, (1) its failure to join an indispensable party and (2) the pendency of similar actions in other jurisdictions. Because Central Station fails to satisfy the collateral order doctrine, we lack jurisdiction and quash the appeal.

The trial court summarized the procedural history of the case as follows:

This case arises out of a complaint filed by RDF on January 22, 2024, asserting claims for actual and constructive fraud under the

_____

[*] Retired Senior Judge assigned to the Superior Court.

Arizona Uniform Fraudulent Transfer Act (Az. Rev. Stat. § 44-1001 et. seq.) and the Pennsylvania Uniform Voidable Transactions Act (12 Pa. Stat. § 5101 et seq.) to dispute two assignments from non-party defendant Electric Red Ventures, LLC ("Electric Red") to [Central Station] in February 2022 in an alleged transfer to dissipate its assets to frustrate [RDF's] ability to satisfy a judgment it holds against Electric Red in New York.

[Central Station] filed preliminary objections on May 6, 2024, answered by [RDF] on July 9, 2024. [Central Station] replied on July 26, 2024 and [the trial court] ruled on said objections on September 26, 2024, docketed October 9, 2024[,] overruling same and requiring [Central Station's] answer within twenty days.

[Central Station] filed a notice of appeal on October 22, 2024 with the Superior Court. On October 23, 2024 [Central Station] filed a motion to certify the order that is the subject of this appeal as an immediately appealable interlocutory appeal pursuant to 42 Pa. C.S.[A. §] 702(b). Concurrently, [Central Station] filed a motion to stay all proceedings pending any appellate determination of this matter. On November 13, 2024, [the trial court] entered three additional orders[, which] denied the motion to certify the October 9, 2024 interlocutory order as immediately appealable per 702(b)[,] granted the stay of trial court proceedings pending resolution from the Superior Court[, and] requested a concise statement of matters complained of on appeal.

On December 3, 2024 [Central Station] properly filed their [1925(b) statement] as requested by [the trial court]. In this concise statement it raised six distinct issues, the same six issues that it presented in its initial objections[,] as matters complained of on appeal. It similarly averred it intended to seek permissive appeal of the court's October 9, 2024 order from the Superior Court, and if granted, consolidate that appeal with the instant appeal as the issues are all substantially related and acknowledged that not all of them are collateral.

Trial Court Opinion, 12/17/24, at 1-3 (unnecessary capitalization, footnote, and citation omitted).

On December 17, 2024, the trial court filed its opinion, pursuant to Pa.R.A.P. 1925(a), in which it ultimately concluded that the order appealed

from "does not meet the requirements of a collateral order pursuant to Pa.R.A.P. 313." Trial Court Opinion, 12/17/24, at 10.

In this appeal, Central Station raises the following issues for our review:

1. Whether this action must be dismissed with prejudice for lack of subject matter jurisdiction because RDF failed to join all necessary and indispensable parties, including a municipal entity of another sovereign state—the City of Phoenix, Arizona—thereby rendering the trial court's Order void *ab initio*.

2. Whether this action should be dismissed with prejudice pursuant to the doctrine of *lis pendens* because this case, the parties, and the relief requested are substantially the same as in earlier-filed actions that are pending in Texas and New York, where RDF is already seeking to enforce the same judgment that it seeks to enforce here.

Appellant's Brief, at 6-7 (suggested answers and trial court answers omitted; formatting altered).

Before we reach the merits of Central Station's issues, we must first determine whether this appeal is properly before us.

As a general rule, an appellate court's jurisdiction extends only to review of final orders. [*See* Pa.R.A.P. 341(a)]. A final order is an order that disposes of all claims and of all parties or is entered as a final order pursuant to a determination of finality by a trial court or other government unit. Pa.R.A.P. 341(b)(1), (3). … The final order rule reflects the long-held limitation on review by both federal and state appellate courts[.] Considering issues only after a final order maintains distinctions between trial and appellate review, respects the traditional role of the trial judge, and promotes formality, completeness, and efficiency.

*MFW Wine Co., LLC v. Pennsylvania Liquor Control Board*, 318 A.3d 100, 112 (Pa. 2024) (quotation marks, citations, and brackets omitted). Nonetheless, "appellate jurisdiction extends to (1) a final order or an order

certified by the trial court as a final order; (2) an interlocutory order as of right; (3) an interlocutory order by permission; (4) or a collateral order." **Crespo v. Hughes**, 292 A.3d 612, 615-16 (Pa. Super. 2023) (quotation marks and citation omitted).

Central Station avers that we have jurisdiction over its appeal because an appeal may be taken as of right from a collateral order pursuant to Pa.R.A.P. 313. **See** Appellant's Brief, at 1-2. "Whether an order is appealable as a collateral order is a question of law. Our standard of review is de novo, and our scope of review is plenary." **Lobos Management v. Powell**, 330 A.3d 438, 441 (Pa. Super. 2025) (citation omitted). "Moreover, where the issue presented is a question of law as opposed to a question of fact, an appellant is entitled to review under the collateral order doctrine; however, if a question of fact is presented, appellate jurisdiction does not exist." **Yorty v. PJM Interconnection, L.L.C.**, 79 A.3d 655, 660 (Pa. Super. 2013) (citation omitted).

The collateral order doctrine is codified in Rule 313, which provides as follows:

> **(a) General Rule.** An appeal may be taken as of right from a collateral order of a trial court or other government unit.
>
> **(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

- 4 -

Pa.R.A.P. 313. Accordingly, the collateral order doctrine "permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Rule 313(b) — separability, importance, and irreparability." *Commonwealth v. Pownall*, 278 A.3d 885, 902 (Pa. 2022) (citation omitted).

> The separability prong is met if the order's merits can be resolved without an analysis of the merits of the underlying dispute and if it is entirely distinct from the underlying issue in the case.
>
> The right involved is too important to be denied immediate review if the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule. In other words, we must find that the right implicated is important in comparison to the importance of minimizing the costs of piecemeal litigation and promoting judicial accuracy. The right at issue must not only be important to the parties involved but also be deeply rooted in public policy going beyond the particular litigation at hand.
>
> Finally, an order satisfies the third prong if the issue could not be fully remediated if postponed until the conclusion of the case. In essence, the question is whether an erroneous trial court ruling cannot be undone.

*Lobos Management*, 330 A.3d at 441-42 (internal quotation marks and citations omitted). If the order at issue satisfies each of these 3 prongs, this Court has jurisdiction to review the interlocutory appeal. *See id.* at 441.

> Importantly, the collateral order doctrine embodied in Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

***Carolino East Brandywine, L.P. v. Brandywine Village Associates***, 260 A.3d 179, 193 (Pa. Super. 2021) (internal quotation marks and citations omitted). Furthermore, our Supreme Court has cautioned that we temper our application of the collateral order doctrine, mindful "that a party may seek an interlocutory appeal by permission pursuant to Pa.R.A.P. 312." ***Shearer v. Hafer***, 177 A.3d 850, 858 (Pa. 2018) (footnote and citation omitted).[1]

The trial court order at issue in this appeal overruled Central Station's preliminary objections and directed it to file an answer to RDF's complaint. ***See*** Trial Court Order, 10/9/24. Generally, "an order overruling preliminary objections and directing the filing of an answer is interlocutory and unappealable" as a collateral order. ***Chase Manhattan Mortg. Corp. v. Hodes***, 784 A.2d 144, 145 (Pa. Super. 2001) (explaining where "orders deal with the pleadings in the underlying matter and direct the filing of an answer, they are inextricably intertwined with the merits of the action and cannot be characterized as collateral") (citation omitted). However, our jurisdictional analysis does not end here, as "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." ***Rae v. Pennsylvania Funeral Directors Ass'n***, 977 A.2d 1121, 1130 (Pa. 2009).

---

[1] Central Station is also seeking an interlocutory appeal by permission at 147 EDM 2024.

Accordingly, we will address each prong of the collateral order doctrine with respect to each issue Central Station raises in this appeal.

In its first issue, Central Station avers the order is collateral because it raises the issue of an alleged failure to join an indispensable party, which implicates the trial court's subject matter jurisdiction. *See* Appellant's Reply Brief, at 2. Specifically, Central Station argues that this issue is "separable from and collateral to the main cause of action; too important to be denied review; and if review is postponed until final judgment in the case, Central Station's due process right to not be subjected to the trial court's jurisdiction will be irreparably lost." *Id.* at 2-3 (internal quotation marks and citations omitted).

"In general, an indispensable party is one whose rights are so connected with the claims of the litigants that no decree can be made without impairing its rights[.]" *In re Estate of Anderson*, 317 A.3d 997, 1004-05 (Pa. Super. 2024) (brackets and citation omitted). However, "[i]f no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation." *Orman v. Mortgage I.T.*, 118 A.3d 403, 406 (Pa. Super. 2015) (citation omitted).

First, turning to the separability prong, we must consider whether the indispensable party issue is entirely distinct from the underlying issues in the case and whether we can resolve the issue without analyzing the merits of RDF's fraudulent transfer claims. *See Lobos Management*, 330 A.3d at 441.

- 7 -

Central Station argues that the issue satisfies this prong because it is "separate from the question of whether Electric Red fraudulently conveyed assets to Central Station[.]" Appellant's Reply Brief, at 3. We disagree.

"Although appellate courts tolerate a degree of interrelatedness between merits issues and the question sought to be raised in the interlocutory appeal, the claim must nevertheless be conceptually distinct from the merits of plaintiff's claim." *Calabretta v. Guidi Homes, Inc.*, 241 A.3d 436, 442 (Pa. Super. 2020) (citation omitted). To make this determination, we are mindful that Pennsylvania courts have adopted "a practical separability analysis" which recognizes that "some potential interrelationship between merits issues and the question sought to be raised in the interlocutory appeal is tolerable." *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 371-72 (Pa. 2021).

Central Station's indispensable party issue is not separable because it depends upon the applicability of the indispensable party defense, which does not present a purely legal question. *See Yorty*, 79 A.3d at 660. Rather, determining whether Electric Red and the City of Phoenix are indispensable parties would necessitate making factual determinations that are intertwined with the underlying fraudulent transfer claims. *See In re Reglan Litigation*, 72 A.3d 696, 701 (Pa. Super. 2013) (finding issue was not sufficiently separate from the main cause of action where it did not involve "the application of clearly established law to a given set of facts"). Specifically,

> [t]his Court has held that trial courts must weigh the following considerations in determining if a party is indispensable to a

particular litigation: (1) whether absent parties have a right or an interest related to the claim; (2) if so, the nature of that right or interest, (3) whether that right or interest is essential to the merits of the issue, and (4) whether justice can be afforded without violating the due process rights of absent parties. In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party.

*Liberty Mutual Group, Inc. v. 700 Pharmacy, LLC*, 270 A.3d 537, 544 (Pa. Super. 2022) (quotation marks, brackets, and citations omitted).

At this early stage of the litigation, assessing whether the parties are indispensable would require this Court to make factual inquiries beyond the permissible scope of collateral jurisdiction. *See Yorty*, 79 A.3d at 660; *see Calabretta*, 241 A.3d at 443 (finding appellate review under collateral review doctrine inappropriate where review of issue would require a fact-based inquiry). Specifically, determining whether Electric Red and the City of Phoenix are indispensable to the action would require interpreting the assignment agreements to determine: (1) whether either party has a right or interest related to the fraudulent transfer claims; (2) the nature of that right or interest; (3) whether the right or interest is essential to the merits of the fraudulent transfer claims; and (4) whether justice can be afforded in either party's absence. *See Liberty Mutual*, 270 A.3d at 544. A much more detailed factual record is needed to resolve these issues. As the trial court aptly noted:

> this [c]ourt, in reviewing the facts of the complaint, the averments asserted in the preliminary objections and the response thereto, which at this juncture are the *only* facts of record in this matter, cannot conclude that [RDF] failed to join all necessary and indispensable parties[.] … The record as it stands currently, if proven at trial[,] may not preclude [RDF] from relief, although a

- 9 -

further developed record may alter this [c]ourt's conclusions.

Trial Court Opinion, 12/17/24, at 8-9 (unnecessary capitalization omitted; emphasis in original). Therefore, we cannot find the indispensable party issue conceptually distinct from the merits of RDF's underlying claim, and it fails to satisfy the separability prong. While our jurisdictional analysis of this issue could end here, we address the remaining prongs in the interest of completeness.[2]

Next, turning to the importance prong, we must determine whether the indispensable party issue involves a right too important to be denied immediate review. *See Lobos Management*, 330 A.3d at 441-42. Central Station maintains that the trial court's subject matter jurisdiction is deeply rooted in public policy, and its importance is evidenced by the fact that "any order issued by the court lacking such jurisdiction is void." Appellant's Reply Brief, at 9 (citation omitted). We agree.

_____

[2] We have previously stated that "Rule 1032 provides that joinder of the indispensable party is the default remedy, and that dismissal is appropriate **only** if the party cannot be joined." *Towamencin Sumneytown Pike, LLC v. Philadelphia Suburban Dev. Corp.*, 2022 WL 2951718 at *10 (Pa. Super. 2022) (unpublished memorandum) (emphasis in original) (citing Pa.R.C.P. 1032, Explanatory Cmt. – 1994); *see also* Pa.R.A.P. 126(b) (unpublished, non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value). It is clear that the trial court cannot make the evaluation as to whether to order the joinder of another party at this early junction.

> The absence of an indispensable party goes absolutely to the court's jurisdiction. If an indispensable party is not joined, a court is without jurisdiction to decide the matter. The absence of an indispensable party renders any order or decree of the court null and void. The issue of the failure to join an indispensable party cannot be waived.

**Anderson**, 317 A.3d at 1005 (citation omitted). Accordingly, because the indispensable party issue implicates the court's subject matter jurisdiction, which is "deeply rooted in public policy going beyond the particular litigation at hand[,]" this prong is satisfied. **Lobos Management**, 330 A.3d at 442 (citation omitted).

Finally, we turn to the irreparability prong, which requires us to consider whether the indispensable party defense will be irreparably lost if appellate review is denied. **See id.** Central Station maintains that "delaying review would irreparably deprive Central Station of its due process right to avoid the burden of litigating this case." Appellant's Reply Brief, at 12. We disagree.

"[W]hether a party's claims will be 'irreparably lost' if review is postponed turns on the particular facts and circumstances of each case." **Z.P. v. K.P.,** 269 A.3d 578, 587 (Pa. Super. 2022) (citation omitted). This Court has explained that procedural consequences do not satisfy the irreparability prong:

> To satisfy this element, an issue must actually be lost if review is postponed. Orders that make a trial inconvenient for one party or introduce potential inefficiencies, including post-trial appeals of orders and subsequent retrials, are not considered as irreparably lost. An interest or issue must actually disappear due to the processes of trial.

- 11 -

*Commonwealth v. Sabula*, 46 A.3d 1287, 1293 (Pa. Super. 2012) (citation omitted) (rejecting argument that avoiding cost of trial and likelihood of incarceration would be irreparably lost if immediate appeal of order refusing to enforce a non-prosecution agreement were denied).

Central Station's indispensable party defense will not be irreparably lost if appellate review is denied at this early stage of the litigation and the claims are allowed to proceed because the trial court's order will not make Central Station's right to raise the issue disappear. ***See id.*** Rather, Central Station may properly raise the defense in its answer or in any subsequent pleadings and dispositive motions. Notably, because the indispensable party defense implicates the trial court's subject matter jurisdiction, it cannot be waived and may be raised at any time, including by the court *sua sponte*.[3] ***See*** Pa.R.C.P. 1032(b) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction or that the indispensable party be joined, but if that is not possible, then it shall dismiss

---

[3] Under Rule 1032(b), "[i]f an indispensable party is not joined, a court is without jurisdiction to decide the matter. The absence of an indispensable party renders any order or decree of the court null and void. **The issue of the failure to join an indispensable party cannot be waived**." ***Hart v. O'Malley***, 647 A.2d 542, 549 (Pa. Super. 1994) (cleaned up) (emphasis added).

the action."). Therefore, because Central Station's indispensable party defense will not be irreparably lost if appellate review is denied at this early stage, this issue fails to satisfy the collateral order doctrine.

Accordingly, because we are to construe the collateral order doctrine narrowly, and all three prongs are not clearly present, we lack jurisdiction to review Central Station's indispensable party issue. *See Carolino East Brandywine*, 260 A.3d at 193.

In its second issue, Central Station avers that the trial court's order "raises the collateral issue of whether this action must be dismissed pursuant to the doctrine of *lis pendens* because, in several prior pending actions, RDF is already seeking to enforce the same judgment that it seeks to enforce here." Appellant's Brief, at 2. We disagree.

The *lis pendens* doctrine permits dismissal of an action if an earlier, pending action "involve[s] the same parties, the same relief requested, the same causes of action, and the same rights asserted." *Spinelli by Morris v. Fallon*, 322 A.3d 956, 962 (Pa. Super. 2024) (citations omitted); Pa.R.C.P. 1028(a)(6). "[T]he question of a pending prior action is purely a question of law determinable from an inspection of the pleadings." *Richner v. McCance*, 13 A.3d 950, 958 (Pa. Super. 2011) (internal quotation marks and citation omitted).

First, we consider whether Central Station's *lis pendens* issue satisfies the separability prong. The issues of whether the parties, relief requested,

causes of action, and rights asserted in the Texas and New York actions are the same as those in the instant action are entirely distinct from the underlying issues in the case, namely, whether the assignments between Electric Red and Central Station constituted actual or constructive fraudulent transfers. ***See Lobos Management***, 330 A.3d at 441. Unlike its indispensable party issue, Central Station's *lis pendens* issue would not require this Court to make factual determinations intertwined with the merits of the fraudulent transfer claims. Rather, it presents a purely legal question that could be resolved on the parties' pleadings. ***Richner***, 13 A.3d at 958. Therefore, we agree with Central Station that this prong is satisfied.

Next, we consider the importance prong. This Court has recognized that "[t]he avoidance of duplicative litigation and the corresponding waste of judicial resources has long been a strongly-held public policy in this Commonwealth." ***Richner***, 13 A.3d at 957 (citations omitted). Therefore, because the right at issue is "deeply rooted in public policy going beyond the particular litigation at hand" and "important in comparison to the importance of minimizing costs of piecemeal litigation and promoting judicial accuracy," Central Station's *lis pendens* issue also satisfies this prong. ***Lobos Management***, 330 A.3d at 441-42 (citations omitted).

Finally, we consider whether Central Station's *lis pendens* issue satisfies the irreparability prong. Relying on ***Richner***, Central Station maintains that the civil proceedings in Texas and New York satisfy the irreparability prong

because if RDF's Pennsylvania action proceeds, "the parties will have irreparably dissipated their assets and the opportunity to prevent inconsistent or duplicative results will be lost." *See* Appellant's Reply Brief, at 16-17 (citing *Richner*, 13 A.3d at 957) (internal quotation marks and brackets omitted). We disagree.

In *Richner*, this Court acknowledged that the irreparability prong is "not satisfied merely because a party had to wait until final judgment to appeal while suffering from *potential* inefficiencies during the pendency of the case." *Richner*, 13 A.3d at 957 (emphasis in original; citation omitted). However, the *Richner* panel concluded the circumstances of that case, namely, where the same parties were actively proceeding with multiple actions in multiple Pennsylvania trial courts and seeking the same relief, "guarantee[d] inefficiencies for the parties and a waste of judicial resources—regardless of the outcome of later appeals." *Id.* Those distinct circumstances are plainly not present here, where the civil actions are not simultaneously proceeding in Pennsylvania's court system. Rather, the New York action has concluded, and the Texas domestication action is pending. *See Smith v. Lanthrop*, 1863 WL 4801 at *4 (Pa. 1863) (holding plea of *lis pendens* in another state is not a defense to suit in Pennsylvania); *Singer v. Dong Sup Cha*, 550 A.2d 791, 792-93 (Pa. Super. 1988) (holding prior pending action in another state cannot be used as a defense to dismiss a later Pennsylvania action).

Moreover, Central Station has preserved its *lis pendens* defense by asserting it in its preliminary objections and may address it further in its answer to RDF's complaint or on appeal following final judgment. **See** Pa.R.C.P. 1032(a); **see also** Pa.R.A.P. 302(a). Therefore, we conclude that Central Station's *lis pendens* issue will not be irreparably lost if Central Station is denied immediate appellate review, and consequently, it fails to satisfy this prong.

Accordingly, because Central Station's indispensable party and *lis pendens* issues fail to satisfy each prong of the collateral order doctrine, we lack jurisdiction to review the trial court's interlocutory order and quash this appeal.

Appeal quashed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/30/2025