J-A25034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THE EVANGELICAL LUTHERAN CHURCH OF THE ATONEMENT AT WYOMISSING, PA | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| HORST CONSTRUCTION, HORST CONSTRUCTION COMPANY AND HORST CONSTRUCTION MANAGEMENT COMPANY | : : : : : : | |
| v. | : : | |
| WEAVER MASONRY, INC., PROTECH MECHANICAL CONTRACTORS, INC, M&M DRYWALL CO., HURST ELECTRIC, LLC, J. RICHARD BURKHOLDER, INC., AND WEAVER COMPANIES | : : : : : : : | No. 602 MDA 2020 |

Appeal from the Judgment Entered March 6, 2020
In the Court of Common Pleas of Berks County
Civil Division at No(s): 19-15109

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED MARCH 09, 2021**

Appellant, the Evangelical Lutheran Church of the Atonement at

Wyomissing, PA,[1] appeals from the judgement entered in the Berks County

---

[1] Generally, the Commonwealth Court is vested with exclusive jurisdiction over appeals involving not-for-profit corporations. **See** 42 Pa.C.S.A. § 762(a)(5). Here, Appellant is a not-for-profit corporation. (**See** Complaint, filed 10/9/19, at ¶1). Nevertheless, we exercise jurisdiction over this case, where Appellees

Court of Common Pleas in favor of Appellees, Horst Construction, Horst Construction Company, and Horst Construction Management Company, in this breach of contract action.[2]  We affirm.

The trial court opinion set forth the relevant facts and procedural history of this appeal as follows:

> On April 28, 1994, [Appellant], and [Appellees], entered into a written contract for the construction of a new addition to [the church] (hereinafter, Project).  According to the complaint, work began on Project on May 19, 1994 and ended in December 1995.
>
> An occupancy permit issued on May 22, 1995 allowed the public to occupy and use the addition.  The permit also confirmed that work had been performed in accordance with the applicable codes and the plans.
>
> The complaint alleges that immediately after the completion of the construction in 1995, water infiltrated the masonry walls of the new addition and continued to do so indefinitely. [Appellees] investigated the water infiltration and failed to stop it.  [Appellant] engaged contractors in 2019 to investigate and address the continuing water infiltration problem.  The contractors found numerous defects, and [Appellant] concluded that during the initial construction

---

have not objected to this Court's jurisdiction.  ***See Flaxman v. Burnett***, 574 A.2d 1061 (Pa.Super. 1990) (declining to transfer cause of action to Commonwealth Court where parties did not raise objection to Superior Court's assumption of jurisdiction, as required by Pa.R.A.P. 741(a)).

[2] On December 9, 2019, Appellees filed a joinder complaint against its subcontractors, Weaver Masonry, Inc., Protech Mechanical Contractors, Inc., M&M Drywall Co., Hurst Electric, LLC, J. Richard Burkholder, Inc., and Weaver Companies.  On March 6, 2020, the trial court dismissed the joinder complaint as moot.  While several of these entities have now filed notices of non-participation in this Court, Protech Mechanical Contractors, Inc. has filed a joinder brief that adopts Appellees' arguments, pursuant to Pa.R.A.P. 2137.

[Appellees] violated various building codes and local ordinances.

After the passage of almost twenty-five years, [Appellant] filed its [*praecipe* for writ of summons] on July 30, 2019, alleging that [Appellees] constructed Project defectively. The complaint contains causes of action for breach of contract, unjust enrichment and violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL).[3]

(Trial Court Opinion, filed May 11, 2020, at 1).

On January 8, 2020, Appellees filed a motion for judgment on the pleadings, alleging the relevant statute of repose, 42 Pa.C.S.A § 5536, barred Appellant's lawsuit. Appellees also contended that Appellant's UTPCPL claim failed as a matter of law, because the statute "only applies to consumer goods and services that are used primarily for 'household purposes' and the [c]omplaint makes it clear that the Project was for religious and civic purposes…." (Motion for Judgment on the Pleadings, filed 1/8/20, at 4). By order entered March 6, 2020, the trial court granted Appellees' motion and entered judgment in favor of Appellees and against Appellant. The court also dismissed Appellant's complaint with prejudice and dismissed Appellees' joinder complaint as moot.

Appellant timely filed a notice of appeal on Monday, April 6, 2020. On April 8, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained on appeal. Appellant timely filed its Rule

---

3 73 P.S. §§ 201-1 to 201-9.3.

1925(b) statement on April 28, 2020.

Appellant raises one issue for our review:

> Whether the trial court erred as a matter of law in granting [Appellees'] motion for judgment on the pleadings when [Appellant's] complaint alleged facts which, if proven true, would render [Appellees'] construction unlawful and not protected by 42 Pa.C.S.A § 5536.

(Appellant's Brief at 4).

The following scope and standard of review apply to this Court's review of orders granting a motion for judgment on the pleadings:

> Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

> We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa.Super. 2015) (quoting *Southwestern Energy Production Co. v. Forest Resources, LLC*, 83 A.3d 177, 185 (Pa.Super. 2013)). "On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge siting without a jury." *Rubin v. CBS Broadcasting Inc.*, 170 A.3d 560, 564 (Pa.Super. 2017).

On appeal, Appellant argues that Section 5536 does not bar civil actions against entities that unlawfully perform construction services. Appellant claims that the factual allegations in its complaint, "if proven, show [Appellees] violated the local building code." (Appellant's Brief at 14). Although the Pennsylvania Department of Labor and Industry issued an occupancy permit upon completion of the construction project, Appellant insists this fact is not determinative of whether the construction was lawful. Appellant also insists its "complaint advanced more than just mere speculation. It averred specific property damage that [Appellant] believed to be caused by [Appellees'] deficient and defective construction." (*Id.* at 17).

Regarding the UTPCPL, Appellant acknowledges that the statute specifically applies to purchases of goods and services primarily for personal, family, or household needs. Appellant contends, however, that a construction project for "a place of religious worship" amounts to a "personal" purpose. (*Id.* at 20). Regardless of whether the construction project is ultimately proven to be for a personal purpose, Appellant maintains, "at this time and stage in litigation, [its] contention that the project's purpose is for personal … purposes must be taken as true…." (*Id.*) Appellant concludes the trial court erred in granting Appellees' motion for judgment on the pleadings.[4] We

_____

[4] Appellant also claims the trial court erred "by barring [its] claims under the statute of limitation for actions in contract and negligence." (Appellant's Brief at 17). However, Appellant failed to include this argument in its Rule 1925(b)

- 5 -

disagree.

Section 5536 provides, in pertinent part, as follows:

### § 5536. Construction projects

**(a) General Rule.**—Except as provided in subsection (b), a civil action or proceeding brought against any person **lawfully** performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.

(2) Injury to property, real or personal, arising out of any such deficiency.

(3) Injury to the person or for wrongful death arising out of any such deficiency.

(4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).

42 Pa.C.S.A. § 5536(a) (emphasis added).

"[B]oth Pennsylvania and federal courts have consistently held that [Section] 5536 is a statute of repose." ***Vargo v. Koppers Co., Inc., Engineering and Const. Div.***, 552 Pa. 371, 376, 715 A.2d 423, 425 (1998). "Statutes of repose differ from statutes of limitation in that statutes of repose

---

statement, so it is waived. ***See U.S. Bank, N.A. for Certificateholders of LXS 2007-7N Trust Fund v. Hua***, 193 A.3d 994 (Pa.Super. 2018) (reiterating that issues not raised in concise statement are waived).

- 6 -

potentially bar a plaintiff's suit before the cause of action arises, whereas statutes of limitation limit the time in which a plaintiff may bring suit after the cause of action accrues." ***McConnaughey v. Building Components, Inc.***, 536 Pa. 95, 97, 637 A.2d 1331, 1332 (1994). Generally, statutes of repose are jurisdictional and their scope is a question of law for courts to determine. ***Gilbert v. Synagro Cent., LLC***, 634 Pa. 651, 131 A.3d 1 (2015).

"[S]tatutory interpretation of the term 'lawfully' as used in [S]ection 5536 raises a legal question[.]" ***Calabretta v. Guidi Homes, Inc.***, 241 A.3d 436, 442 (Pa.Super. 2020).

> When interpreting a statute, this Court is guided by the Statutory Construction Act…of 1972, 1 Pa.C.S.A. §§ 1501–1991. Our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review. [T]he best indication of the General Assembly's intent in enacting a statute may be found in its plain language[.] We must construe words and phrases in statutes according to rules of grammar and according to their common and approved usage[.] One way to ascertain the plain meaning and ordinary usage of terms is by reference to a dictionary definition.
>
> When the plain language of a statute is ambiguous, we may consider, *inter alia*, the object to be obtained and the consequences of a particular interpretation. Moreover, when interpreting a statute we must presume [t]hat the General Assembly [did] not intend a result that is absurd, impossible of execution or unreasonable. We must also presume [t]hat the General Assembly intends to favor the public interest as against any private interest.

***Branton v. Nicholas Meat, LLC***, 159 A.3d 540, 548 (Pa.Super. 2017) (internal citations and quotation marks omitted).

The Judicial Code does not define the term "lawfully," as used in Section

5536(a). **See** 42 Pa.C.S.A. § 102 (defining words and phrases used in Judicial Code, subject to additional definitions contained in subsequent provisions).[5] Nevertheless, this Court has examined the plain meaning of this word in conjunction with its analysis of other statutes.

> Black's Law Dictionary defines the term lawful as, "Legal; warranted or authorized by the law; having the qualifications prescribed by law; not contrary to nor forbidden by the law."
>
> \*     \*     \*
>
> Specifically, the note to the term "lawful" states that:
>
> > The principal distinction between the terms "lawful" and "legal" is that the former contemplates the substance of law, the latter the form of law. To say of an act that it is "lawful" implies that it is authorized, sanctioned, or at any rate not forbidden, by law. To say that it is "legal" implies that it is done or performed in accordance with the forms and usages of law, or in a technical manner. In this sense "illegal" approaches the meaning of "invalid." For example, a contract or will, executed without the required formalities, might be said to be invalid or illegal, but could not be described as unlawful. Further, the word "lawful" more clearly implies an ethical content than does "legal." The latter goes no further than to denote compliance, with positive, technical, or formal rules; while the former usually imports a moral substance or ethical permissibility. A further distinction is that the word "legal" is used as the synonym of "constructive," which "lawful" is not. ... But there are some connections in which the two words are used as exact equivalents.

**Branton, supra** at 549-50 (internal citations omitted).

---

[5] Chapter 55 of the Judicial Code does not include a "definitions" section.

Further, the UTPCPL, provides, in pertinent part, as follows:

### § 201-9.2.  Private actions

(a)  Any person who purchases or leases goods or services primarily for **personal, family or household** purposes and thereby suffers any ascertainable loss of money or property real or personal as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.  The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.  The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2(a) (emphasis added).  "The restriction included in the act addresses itself solely to the **purpose** of the purchase, not the **type of product** purchased."  ***Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.***, 574 A.2d 641, 648 (Pa.Super. 1990), *aff'd*, 529 Pa. 512, 605 A.2d 798 (1992) (emphasis in original).  ***See also Cumberland Valley School Dist. v. Hall-Kimbrell Environmental Services, Inc.***, 639 A.2d 1199 (Pa.Super. 1994) (determining school district's purchase of asbestos abatement services was not primarily for personal, family, or household purposes, and it could not maintain private cause of action under UTPCPL against asbestos removal company).

Instantly, the trial court relied on Section 5536(a) to conclude that Appellant needed to file its complaint within twelve (12) years after completion of the construction project.  (***See*** Trial Court Opinion at 4).  Regarding the

question of whether Appellees "lawfully" performed the construction, the court emphasized that Appellant obtained an occupancy permit from the Commonwealth upon completion of the project. (**See** Motion for Judgment on the Pleadings at Exhibit B). Moreover, the court noted that Appellant's complaint failed to identify the specific sections of the building code that Appellees purportedly violated.[6] (**See** Trial Court Opinion at 4). Regarding Appellant's UTPCPL claim, the court observed that Appellant admitted "that this statute has never before been applied to a religious institution."[7] (Trial Court Opinion at 5). Absent more, the court determined Appellant "is neither a household nor a person," and it did not qualify for relief under the UTPCPL. (**Id.**)

Here, we cannot say that the court erred in concluding that Appellant failed to commence its civil action in accordance with Section 5536(a). The occupancy permit constituted evidence of record to indicate that Appellees lawfully performed the construction. **See Branton, supra**. **Compare Calabretta, supra** (noting there were still unresolved factual issues relating to whether appellants "lawfully" constructed homes where there was no record

---

[6] In its complaint, Appellant explained that it hired new contractors to perform repairs and investigate Appellees' work in July 2019. (**See** Complaint at ¶¶ 21-22). Although the complaint lists various "construction defects" found during the investigation, Appellant did not specifically aver how these defects failed to comply with the relevant building codes and statutes. (**Id.** at ¶23(a)-(q)).

[7] Appellant reiterates this point on appeal. (**See** Appellant's Brief at 19).

- 10 -

evidence regarding whether appellants' acted "lawfully" under statutory interpretations advanced by parties). Additionally, the court correctly found that Appellant is a nonprofit corporation that entered into a contract for construction services to serve "religious purposes," rather than "household purposes." ***See Valley Forge Towers, supra***; 73 P.S. § 201-9.2(a). Therefore, the court properly granted Appellees' motion for judgment on the pleadings. ***See Rubin, supra***; ***Rourke, supra***. Accordingly, we affirm.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/09/2021